**James GARRY and Thomas Thompson,**
**Plaintiffs–Appellants,**

**v.**

**John GEILS, individually and as President of the Village of Bensenville, Richard Weber, Peggy Walberg, Richard Reimer, Joseph Krass, Robert Strandt, Barbara Wanzung, individually and as Trustees of the Village of Bensenville, Defendants–Appellees.**

**Nos. 95–1452, 95–1981.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 2, 1995.

Decided April 22, 1996.

Steven Bloomberg, Moss & Bloomberg, Bolingbrook, IL, Maureen T. Murphy, Zukowski, Rogers, Flood & McArdle, Chicago, IL, Stuart D. Gordon (argued), Chicago, IL, for James Garry and Thomas Thompson in No. 95–1452.

James R. Schirott, Phillip A. Luetkehans (argued), Mary E. Dickson, Schirott & Luetkehans, Itasca, IL, for John Geils, Richard Weber, Peggy Walberg, Richard Reimer, Joseph Krass, Robert Strandt, and Barbara Wanzung in No. 95–1452.

Maureen T. Murphy, Zukowski, Rogers, Flood & McArdle, Chicago, IL, Stuart D. Gordon (argued), Chicago, IL, for James Garry and Thomas Thompson in No. 95–1981.

James R. Schirott, Phillip A. Luetkehans (argued), Mary E. Dickson, Matthew F. Tarbox, Schirott & Luetkehans, Itasca, IL, for John Geils, Richard Weber, Peggy Walberg, Richard Reimer, Joseph Krass, Robert Strandt and Barbara Wanzung in No. 95–1981.

Before COFFEY, FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

In May of 1994 the Village of Bensenville ("the Village") was granted an order in Illinois state court condemning part of a property owned by James Garry and leased to Thomas Thompson ("the Garry property" or "the property") in connection with Thompson's rental business. Garry and Thompson ("plaintiffs") subsequently filed a § 1983 action in federal district court against the President and Trustees of the Village of Bensenville ("defendants"), individually and in their official capacities. The plaintiffs alleged that the Garry property was chosen for condemnation as an act of political retaliation. The district court granted the defendants' motion to dismiss, finding the action barred by res judicata. We conclude that because the plaintiffs were essentially claiming injury at the hands of an Illinois court, the proper approach was the *Rooker–Feldman* doctrine, rather than res judicata. Thus we hold that the district court had no jurisdiction over the plaintiffs' claim and affirm the dismissal.

## I.

The plaintiffs maintain that because they publicly supported candidates from the Bensenville Home Town Party for the April 1991 election of the Village Board of Trustees (through letters, signs, and money donations), they were retaliated against in a subsequent condemnation proceeding. Unfortunately for the Home Town Party, all of their candidates lost in the April 1991 election, leaving the entire Board of Trustees (as well as the Village presidency) controlled by members of the Unity Party-the defendants in this case. During this period in 1991, the Village of Bensenville and the Illinois De-

**1364**

partment of Transportation ("IDOT") were involved in designing and siting an open drainage ditch as part of a Village flood control project. According to the plaintiffs' complaint, which we accept as true for purposes of considering a motion to dismiss, *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir.1996), the IDOT initially proposed locating the ditch on the southeast corner of the Garry property, thus imposing only minimal effects on the plaintiffs' use of the property.

Upon receiving this original proposal from IDOT engineers, however, the defendants (unbeknownst to the plaintiffs) directed that the engineers relocate the ditch further west. Thus relocated, the proposed ditch and required easements covered nearly one-third of the frontage of the Garry property, rendered 8958 square feet of the property unusable, and interfered with customer access to the rental business. The plaintiffs maintain that the defendants insisted on the shift because the plaintiffs had supported the Home Town Party in the 1991 elections. After failing to resolve the issue through negotiations, the Village initiated a condemnation action on November 17, 1992, seeking to condemn a large portion of the Garry property according to the revised ditch plans.

After a hearing on March 17, 1994,[1] the Circuit Court of DuPage County, Illinois entered an order setting preliminary just compensation for the property after determining 1) that the Village of Bensenville had the authority to exercise the power of eminent domain, 2) that the Garry property was subject to this power, and 3) that the power of eminent domain was being "exercised properly" over that property. The court also made a preliminary determination that $71,000 was just compensation for the necessary easements on the property (permanent drainage and access easements, as well as a temporary construction easement). On May 9, 1994, the court entered an order noting that the $71,000 compensation had been deposited with the county treasurer and vesting title in the easements with the Village of Bensenville.

On July 14, 1994, the plaintiffs initiated the instant action under 42 U.S.C. § 1983, claiming that the defendants violated the First and Fourteenth Amendments by unlawfully causing the ditch site to be moved "to punish them for their support of the Bensenville Home Town Party and their opposition to the Unity Party." The plaintiffs sought money damages and both a preliminary and a permanent injunction against any further use of the property by the defendants. The district court granted the defendants' motion to dismiss, finding the plaintiffs' claim barred by res judicata. The district court subsequently denied the plaintiffs' motion to reconsider, finding that they could have raised their constitutional claim at the March 17 hearing or before the order was final on May 9.[2]

**II.**

We can address the plaintiffs' political retaliation claim only if we have jurisdiction to do so. The defendants maintain that under the *Rooker–Feldman* doctrine, neither the district court nor this court has subject matter jurisdiction over this case. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Since the *Rooker–Feldman* doctrine is about whether inferior federal courts have the *authority* (i.e., subject matter jurisdiction) to hear a given case, it can be raised at any time, by either party, or *sua sponte* by the court.[3] *Levin v. ARDC,* 74 F.3d 763, 766

---

1. The plaintiffs' political retaliation claim is entirely founded on comments made at this hearing by the Village Engineer, John A. Bruszewski, that the ditch site was moved at the request of the Village Board of Trustees. Bruszewski's testimony, however, does not clearly support the plaintiffs' theory. Bruszewski repeatedly noted that he was unsure of where the ditch was originally sited, since he did not have the old plans with him, and he also mentioned that another parcel of property, known as Road Pilot, was the reason for the location change. While we cannot reach the merits of plaintiffs' claim, since we do not

have jurisdiction to do so, the submitted evidence for their charge appears minimal.

2. Following this rejection, the plaintiffs attempted to return to state court by requesting permission to file a cross petition and a third party complaint in the circuit court in DuPage County. The circuit court denied their motions; the plaintiffs did not appeal this denial.

3. We note that the defendants did not raise the *Rooker–Feldman* doctrine to the district court in

(7th Cir.1996), *Ritter v. Ross,* 992 F.2d 750, 752 (7th Cir.1993) (raising *Rooker–Feldman sua sponte*), *cert. denied,* —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994).

■ *Rooker–Feldman* is based upon recognition of the fact that inferior federal courts generally do not have the power to exercise appellate review over state court decisions.[4] In *Rooker*, the Supreme Court held that even if a state court decision was wrong, only the Supreme Court has the power to reverse or modify that judgment, since the jurisdiction of federal district courts is strictly original. 263 U.S. at 415–16, 44 S.Ct. at 150. Similarly, the Supreme Court held in *Feldman* that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." 460 U.S. at 482, 103 S.Ct. at 1315. The *Feldman* Court emphasized that, under 28 U.S.C. § 1257 (which gives the Supreme Court the power to review final judgments of the highest state courts), only the Supreme Court itself is empowered to review the final determinations of state courts. *Id.* at 476, 103 S.Ct. at 1311–12 (citing *Rooker,* 263 U.S. at 415–16, 44 S.Ct. at 150). This circuit has consistently emphasized that "taken together, *Rooker* and *Feldman* stand for the proposition that 'lower federal courts lack jurisdiction to engage in appellate review of state-court determinations.'" *Ritter,* 992 F.2d at 753 (citations omitted); *see also Levin,* 74 F.3d at 766; *Homola v. McNamara,* 59 F.3d 647, 650 (7th Cir.1995); *Wright v. Tackett,* 39 F.3d 155, 157 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1100, 130 L.Ed.2d 1067 (1995); *Landers Seed Co., Inc. v. Champaign Nat'l Bank,* 15 F.3d 729, 732 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 62, 130 L.Ed.2d 20 (1994); *GASH Assocs. v. Village of Rosemont, Ill.,* 995 F.2d 726, 728 (7th Cir.1993); *Leaf v. Supreme Court of Wis.,* 979 F.2d 589, 596–98 (7th Cir.1992), *cert. denied,* 508 U.S. 941, 113 S.Ct. 2417, 124 L.Ed.2d 639 (1993).

their motion to dismiss, relying instead on theories of waiver, federal abstention, res judicata, and legislative immunity. They did not invoke *Rooker–Feldman* before the district court until after their motion to dismiss had been granted, in their response to the plaintiffs' motion to reconsider.

**4.** Specific congressional authorization of collateral review of state court judgments is the exception to this rule. For example, habeas corpus

■ Where *Rooker–Feldman* applies, lower federal courts have no power to address other affirmative defenses, including res judicata. We have consistently emphasized the distinction between *res judicata* and *Rooker–Feldman* and insisted that the applicability of *Rooker–Feldman* be decided before considering *res judicata.* In *GASH,* 995 F.2d at 728–29, we found that the district court erred in dismissing the case on the basis of res judicata because *Rooker–Feldman* applied—thus leaving the district court without jurisdiction. We noted that res judicata and the *Rooker–Feldman* doctrine "are not coextensive." *Id.* at 728. While res judicata and preclusion are founded upon the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires federal courts to give state court judgments the same effect that the rendering state would, *Rooker–Feldman* is based on the separate principle that only the Supreme Court has appellate jurisdiction over the civil judgments of state courts. *Id.*; *see also* David P. Currie, *Res Judicata: The Neglected Defense,* 45 U. Chi. L. Rev. 317, 321–25 (1978) (distinguishing *Rooker* from res judicata). In *Homola,* 59 F.3d at 650, and *Nesses v. Shepard,* 68 F.3d 1003, 1004 (7th Cir.1995), we again recognized that the *Rooker–Feldman* doctrine should not be confused with res judicata (which we sometimes term "preclusion") and that where *Rooker–Feldman* applies, the res judicata claim must not be reached.

■ In order to determine the applicability of the *Rooker–Feldman* doctrine, the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, *Rooker–Feldman* directs that the lower federal courts lack jurisdiction. If the injury alleged is distinct from that judgment, i.e., the party maintains an

under 28 U.S.C. § 2241 provides for collateral review of state court judgments by inferior federal courts and is an exception to the general principle of *Rooker–Feldman.* *Levin,* 74 F.3d at 766; *Ritter,* 992 F.2d at 753.

injury apart from the loss in state court and not "inextricably intertwined" with the state judgment, *see infra*, res judicata may apply, but *Rooker–Feldman* does .not. While we have not always emphasized this aspect of the *Rooker–Feldman* doctrine (since the contrast to res judicata was not usually at issue), it emerges from the fountainhead cases themselves and has been consistently respected in our application of the doctrine.

In *Rooker*, the Supreme Court acknowledged that the plaintiff claimed to be injured by the state court's treatment of her case, not simply by the defendant: "The grounds advanced for resorting to the [federal] District Court are that the [state] *judgment* was rendered and affirmed in contravention of the contract clause of the Constitution of the United States ... and the due process of law and equal protection clauses of the Fourteenth Amendment...." 263 U.S. at 414–15, 44 S.Ct. at 150 (emphasis added). The *Rooker* Court held, however, that no matter how wrongful a state court decision may have been, a federal district court had no jurisdiction to reverse or modify it. *Id.* at 415–16, 44 S.Ct. at 150.[5] The *Feldman* Court similarly held that federal district courts "do not have jurisdiction ... over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the *state court's action* was unconstitutional." 460 U.S. at 486, 103 S.Ct. at 1317 (emphasis added).[6] Thus *Rooker* and *Feldman* both proclaimed that if a federal plaintiff claims injury at the hands of a state court, due to its decision in a civil case, federal district courts have no jurisdiction to hear the case; and the only appeal is to the Supreme Court after a final judgment by the highest state court.

Our decision in *GASH*, 995 F.2d 726, explicitly considered the distinction between res judicata and *Rooker–Feldman* and focussed upon the idea that *Rooker–Feldman* was about an injury caused by the state court judgment itself. We summarized the result in *Ritter v. Ross,* 992 F.2d 750 (holding that *Rooker–Feldman* barred federal jurisdiction in case arising out of state foreclosure judgment), as follows: "[T]he *Rooker–Feldman* doctrine barred the litigation, because the plaintiffs' injury *stemmed from the state judgment*—an erroneous judgment, perhaps, entered after procedures said to be unconstitutional, but a judgment nonetheless." *GASH*, 995 F.2d at 728 (emphasis added). We further elaborated upon this theory of injury at the hands of the state court in our explanation of why no jurisdiction existed to consider the federal claims of GASH:

> Just as in *Ritter*, [GASH] has no claim independent of the state court's adverse decision. To put this differently, the injury of which GASH complains was caused *by* the judgment, just as in *Rooker, Feldman*, and *Ritter*. GASH did not suffer an injury out of court and then fail to get relief from. state court; its injury came from the [state] judgment confirming the sale rather than requiring the Village to condemn the building independently .of the foreclosure, as GASH had demanded.

■ *Id.* at 728–29 (emphasis in original).[7] Thus the distinction between a federal claim alleging injury caused by a state court judgment (necessarily raising the *Rooker–Feldman* doctrine) and a federal claim alleging a

5. We noted in *Homola* that *Rooker* was based upon the proposition that "a decision by a state court, however erroneous, is not itself a violation of the Constitution actionable in federal court." 59 F.3d at 650.

6. In *Leaf*, 979 F.2d at 596, we noted the significance of this language from *Feldman*. We elaborated that if the injury alleged by the federal plaintiff was due to the "nonjudicial" actions of a state court, i.e., if the injury did not "arise out of judicial proceedings," lower federal courts could have jurisdiction: "A district court ... may have jurisdiction when the litigant's challenge is not directed at a state court's judicial proceedings but rather involves a state court's administrative, legislative, or ministerial actions." *Id.*

7. The distinction is also apparent in our analysis in *Nelson v. Murphy*, 44 F.3d 497 (7th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 671, 133 L.Ed.2d 521 (1995). We found in *Nelson* that prior state court proceedings did not pose a *Rooker–Feldman* bar to federal jurisdiction of the claims brought by persons detained in a mental healthy facility because the injury alleged by the plaintiffs was distinct from the state court decisions: "Plaintiffs avoid this *[Rooker–Feldman]* rule ... because they challenge the. alteration of their passes independently of the court's approval of that alteration." *Id.* at 503 (citing *GASH).*

prior injury that a state court failed to remedy (raising a potential res judicata problem but not *Rooker–Feldman)* has been recognized in this circuit at least since our decision in *GASH.*[8]

In *Homola* and *Nesses* we offered the following rough guide to determining whether *Rooker–Feldman* or res judicata should be applied to a federal plaintiff making a claim due to unhappiness with a prior state-court ruling: if the federal plaintiff was the plaintiff in state court, apply res judicata; if the federal plaintiff was the defendant in state court, apply *Rooker–Feldman.* We stated in *Homola:*

> A plaintiff who loses and tries again encounters the law of preclusion. The second complaint shows that the plaintiff wants to ignore rather than upset the judgment of the state tribunal. A *defendant* who has lost in state court and sues in federal court does not assert injury at the hands of his adversary; he asserts injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review. It must be dismissed not on the basis of preclusion but for lack of jurisdiction.

59 F.3d at 650 (emphasis in original).[9] This distinction based upon state-court status as a plaintiff or defendant is a helpful shorthand, but it was not intended to be and should not be understood as a per se rule. It would not make sense to read our remarks in *Homola* and *Nesses* as establishing a bright-line rule, since in *Rooker* itself the federal plaintiffs had been plaintiffs in state court, and the federal plaintiffs in *Feldman* were also in the stance of losing plaintiffs. *See Rooker,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362; *Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206. We could hardly adopt a strict *Rooker–Feldman* "rule" that is countered by the very Supreme Court cases from whence the doctrine emerged.

Nonetheless, the guideline proposed in our decisions in *Homola* and *Nesses*—that we should look to the status of the federal plaintiff in the preceding state judgment to determine whether *Rooker–Feldman* or res judicata should be applied—will usually coalesce with the source-of-the-injury standard just enunciated. For in most cases, a plaintiff in state court will have alleged a cause of action based on an injury caused by the defendant; and though that plaintiff may not have gotten a remedy from the state judgment (hence the subsequent federal action), the federal injury alleged is really distinct from the state court decision. Thus res judicata, but not *Rooker–Feldman,* may be applicable. On the other hand, the typical federal claim of a party who was previously a defendant in state court is one alleging injury due more to the "wrongful" state judgment than to any particular act of the opposing party.[10] Thus *Rooker–Feld-*

---

**8.** Some practical aspects of the distinction between the *Rooker–Feldman* doctrine and res judicata are worth recalling. While *Rooker–Feldman* is entirely federal and requires no reference to principles of state law, under res judicata we look to the law of the state in which the prior judgment was entered to determine whether that state "would give that judgment preclusive effect against the claims asserted in the federal action." *Pirela v. Village of North Aurora,* 935 F.2d 909, 911 (7th Cir.) (citations omitted), *cert. denied,* 502 U.S. 983, 112 S.Ct. 587, 116 L.Ed.2d 612 (1991). In addition, under res judicata we must determine whether the party against whom the defense is raised had a full and fair opportunity to pursue its claim in the previous state proceeding. *Id.* Thus under res judicata, if the state would allow for reconsideration of a previously decided claim or if the federal plaintiff did not have an adequate chance to address the claim during the state action, we will consider the federal claim. *Rooker–Feldman* does not contain analogous limitations. In addition, res judicata is an affirmative defense that can be waived,

*Marcus v. Sullivan,* 926 F.2d 604, 615 (7th Cir. 1991) (citing FED. R. CIV. P. 8(c)), whereas *Rooker–Feldman* cannot be waived because it involves our subject matter jurisdiction.

**9.** In *Nesses,* we asserted that *Homola* stood for the principle that if *Rooker–Feldman* is to be kept distinct from res judicata, *Rooker–Feldman* "ought to be confined to cases in which the defendant in the state court is seeking to undo a remedial order of some sort." 68 F.3d at 1004. We noted that such a situation "is unmistakably a collateral attack on the state court's judgment," whereas "[w]hen a plaintiff seeks to relitigate a suit that has been decided against him, he is not so much attacking as trying to bypass the judgment in that suit; and the doctrine that blocks him is res judicata." *Id.*

**10.** The focus upon injury at the hands of a state court is particularly apparent in cases where the federal plaintiff is actually suing the state court or state court judges. *See, e.g., District of Colum-*

*man* forbids lower federal courts to accept jurisdiction over the case; and the res judicata claim is not even reached.

It is not surprising that most of our cases applying *Rooker–Feldman* deal with federal plaintiffs who were defendants in the preceding state action. It remains worthy of note, however, that the plaintiff/defendant guideline will have exceptions. For example, where the preceding state court action was in the nature of a declaratory judgment suit, *Rooker–Feldman* may well bar jurisdiction when the losing *plaintiff* attempts to try again in federal district court. As noted above, *Feldman* itself was such a suit. *See Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206. Feldman and Hickey initially filed petitions with the District of Columbia Court of Appeals seeking waiver of a local bar rule; and when this effort failed, they sued the local court in federal court. Thus although they were essentially *plaintiffs* in state court, the Supreme Court held that the federal district court had no jurisdiction to hear the case; and the second half of *Rooker–Feldman* was born.[11] In fact, *Homola* itself linked its plaintiff/defendant distinction to the fact that a losing state court defendant is usually claiming federal injury due to the state court decision, rather than due to the actions of the adversary.[12] Thus injury due to a state court decision remains the essential inquiry when determining whether *Rooker–Feldman* applies.

bia *Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206; *Leaf v. Supreme Court of Wis.*, 979 F.2d 589; *Wright*, 39 F.3d 155 (claim of conspiracy involving various state court judges); *Nesses*, 68 F.3d 1003 (same).

11. Exceptions to the rule are found within our own cases as well. In *Landers Seed*, 15 F.3d 729, we were faced with a federal plaintiff contesting a reversal by the state appellate court of his counterclaim verdict for breach of contract. Thus the federal plaintiff had also been in the status of a plaintiff in state court in terms of his federal claim (i.e., the state counterclaim). Nonetheless, we held that we had no jurisdiction under *Rooker–Feldman*. *Id.* And in *Homola*, where we found no jurisdiction over any of the claims under *Rooker–Feldman*, we noted that the federal plaintiff had been both a defendant and a plaintiff in the various preceding state court judgments. 59 F.3d at 650.

12. Recall the language of *Homola*:

## III.

Applying the distinction between *Rooker–Feldman* and res judicata to the case at hand, we conclude that, under *Rooker–Feldman*, the district court did not have jurisdiction. The plaintiffs are essentially claiming injury due to a state judgment against them—the judgment condemning a portion of the Garry property. As their counsel acknowledged at oral argument, if the plaintiffs had been able to avoid the state court's condemnation of the property, they would have had no federal action to bring. While the plaintiffs complain that the defendants moved the proposed ditch location as an act of political retaliation against them, the injury alleged was only complete when the state court actually condemned the property. Thus plaintiffs are basically claiming injury at the hands of the state court.

In the context of the condemnation action, the Circuit Court of DuPage County found that the power of eminent domain was being "properly exercised" in this case. Obviously, the power of eminent domain is not being properly exercised if it is being unconstitutionally exercised, as plaintiffs allege. If the plaintiffs desired to challenge the condemnation action against them as unconstitutional, they should have done so through the Illinois condemnation process, and ultimately to the United States Supreme Court if necessary.[13] *See Green St. Ass'n v. Daley*, 373

A *defendant* who has lost in state court and sues in federal court does not assert injury at the hands of his adversary; he asserts injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review. It must be dismissed not on the basis of preclusion but for lack of jurisdiction.

59 F.3d at 650 (emphasis in original).

13. In Illinois a person wanting to challenge the propriety of a condemnation proceeding must do so by filing a traverse or a motion to dismiss during the preliminary stage of the condemnation proceedings. *Towne v. Town of Libertyville*, 190 Ill.App.3d 563, 137 Ill.Dec. 865, 868, 546 N.E.2d 810, 813 (1989), *appeal denied*, 131 Ill.2d 568, 142 Ill.Dec. 889, 553 N.E.2d 403 (1990). Thus the plaintiffs were required to challenge the constitutionality of the condemnation action against their property in this manner. Even if the plaintiffs did not learn of the ditch site change until the March 17, 1994 hearing, they

F.2d 1, 7 (7th Cir.) (challenges to constitutionality of condemnation actions belong in state court as long as taking "is ostensibly for a public purpose," i.e., not "designed solely to deny constitutional rights"), *cert. denied*, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995 (1967); *Blankner v. City of Chicago*, 504 F.2d 1037, 1040–41 (7th Cir.1974) (claim of due process violations within condemnation action barred in federal court when not raised in state court), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1678, 44 L.Ed.2d 101 (1975). That the plaintiffs may have already waived the opportunity to challenge the constitutionality of the condemnation, leaving them with no forum in which to assert their claim, does not affect our lack of jurisdiction under *Rooker–Feldman*. In *Feldman* itself, the Supreme Court acknowledged this consequence: "By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in *any* federal court. This result is eminently defensible on policy grounds." 460 U.S. at 482 n. 16, 103 S.Ct. at 1315 n. 16 (emphasis added) (noting that lack of jurisdiction in Supreme Court, due to state-court waiver, does not imply jurisdiction in lower federal courts).

The *Feldman* Court found that constitutional claims that are "inextricably intertwined" with state court judgments negate federal district court jurisdiction because such claims "in essence" call for review of the state court's decision. *Id.* We have repeatedly noted the significance of the *Rooker–Feldman* "inextricably intertwined" principle and its relationship to claims that were not raised in state court:

> Engaging in impermissible appellate review may occur when a district court is asked to entertain a claim that was not even argued in the state court but is "inextricably intertwined" with the state court judgment. . . .
>
> There is, unfortunately, no bright line that separates a federal claim that is "inextricably intertwined" with a state court judgment from a claim that is not so intertwined. The crucial point is whether "the district court is in essence being called upon to review the state-court decision."

*Ritter*, 992 F.2d at 753–54 (relying on *Feldman*); *see also Levin*, 74 F.3d at 766–67; *Wright*, 39 F.3d at 157; *Landers Seed*, 15 F.3d at 732–33; *Leaf*, 979 F.2d at 598–99. We conclude that the plaintiffs' claim of political retaliation, though not raised in the state condemnation action, is inextricably intertwined with that condemnation action. Their claim that the condemnation was altered by defendants in an unconstitutional manner is inextricably intertwined with the state court judgment and the finding that the power of eminent domain was being properly exercised. Thus neither the district court nor this court has jurisdiction to address the plaintiffs' claim.

The facts of this case are similar to those of *Wright v. Tackett*, where the federal plaintiff filed numerous actions, including a § 1983 claim, alleging that the defendants had conspired to violate his civil rights by filing an unlawful foreclosure action against his real property. 39 F.3d at 156–57. We found that *Rooker–Feldman* barred jurisdiction: "Wright 'may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action.'" *Id.* at 158 (quoting *Ritter*, 992 F.2d at 754); *see also GASH*, 995 F.2d 726 (holding

---

failed to request an immediate stay of the proceedings or appeal the court's order within the 30–day period allowed under 735 ILCS 5/7–104(b). The plaintiffs' assertion that constitutional arguments such as theirs would not be heard by the Illinois courts is belied by the very authorities they cite. *See Southwestern Ill. Dev. Auth. v. Vollman*, 235 Ill.App.3d 32, 175 Ill.Dec. 683, 686, 600 N.E.2d 926, 929 (1992) (recognizing availability of immediate interlocutory appeal for claim that power of eminent domain is being improperly exercised); *Towne*, 137 Ill.Dec. at 869–70, 546 N.E.2d at 814–15 (noting that "trial court may determine all questions raised regard-

ing the right of the condemnor to condemn the property" when constitutional challenges are properly raised by traverse or motion to dismiss). Under the principles of comity and federalism, we cannot and will not assume that the plaintiffs' constitutional claims would be treated any differently by the courts of Illinois than by a federal court. State courts are no less bound to uphold the Constitution than are federal courts. The plaintiffs' problem is not the Illinois process, but their own failure to make their constitutional challenge at the appropriate time and in the appropriate manner. *Id.* at 869, 546 N.E.2d at 814.

federal plaintiff's claim of unconstitutional commencement of foreclosure action barred by *Rooker–Feldman*). The plaintiffs in this case are attempting to do what we did not allow the *Wright* and *GASH* plaintiffs to do: challenge a state court judgment against their real property in federal district court.

The plaintiffs contend that while their request for injunctive relief may have been barred by *Rooker–Feldman,* their damages claim was not. They provide no legal authority for this argument. We have previously applied *Rooker–Feldman* to damages claims in similar cases. The fact that *Wright* was seeking only damages (twenty million dollars worth) did not prevent us from denying jurisdiction. *Wright,* 39 F.3d at 156. And in other cases, where money damages were sought along with separate equitable relief, we have applied *Rooker–Feldman* to all the claims equally. *See Landers Seed,* 15 F.3d 729 (damages and injunctive relief sought); *Levin,* 74 F.3d 763 (damages along with declaratory and injunctive relief sought). In *Levin,* we noted that the plaintiff's request for damages was "merely another way to contest his disciplinary proceedings and the Illinois Supreme Court's decision to disbar him." *Id.* at 767 n. 4. While the plaintiffs now maintain that they are seeking only damages, this does not affect our conclusion that the *Rooker–Feldman* doctrine bars jurisdiction over their case.

For the foregoing reasons, the district court's dismissal of the plaintiffs' claim should have been based on a finding of no federal jurisdiction under the *Rooker–Feldman* doctrine. The district court's judgment is therefore modified to make the dismissal of the complaint solely jurisdictional, and as so modified is AFFIRMED.