# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3060

CRESTVIEW VILLAGE APARTMENTS,

*Plaintiff-Appellant*,

v.

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT, et al.,

*Defendants-Appellees*.

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 C 6913—**William J. Hibbler**, *Judge*.

———————

ARGUED MARCH 31, 2004—DECIDED SEPTEMBER 2, 2004

———————

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Crestview Village Apartments Limited Partnership ("Crestview") appeals from the district court's dismissal of its claim for lack of subject matter jurisdiction. The district court reasoned that the *Rooker-Feldman* doctrine, which generally prohibits federal court review of state court judgments, precluded it from exercising jurisdiction over Crestview's claims. We agree and, therefore, affirm the district court's dismissal for lack of jurisdiction.

## I. Background

Crestview owns and manages Crestview Village Apartments, an apartment complex in Kankakee, Illinois bought with financing insured by the United States Department of Housing and Urban Development ("HUD"). According to Crestview, its tenants are primarily African American and most receive federal housing assistance. Crestview alleges that it has been targeted by local and federal government officials due to the racial composition of its tenants.

Crestview's problems with regulators began in November 1998, when HUD cited it for failure to file required financial statements for the years 1995 through 1997. In March 2000, HUD filed an administrative complaint seeking civil penalties based on Crestview's continued failure to submit the financial statements. In February 2001, after Crestview neglected to respond to the complaint, the administrative law judge entered a default judgment against Crestview for $80,000.

Meanwhile, Crestview also encountered difficulties with the City of Kankakee (the "City"). In October 1999, the City filed a building code enforcement action against Crestview in state court. The City later amended its complaint to include a demolition claim and a claim for unpaid sewer and public service fees. In November 2000, when HUD learned about the local building code violations, as charged in the City's complaint, it notified Crestview that, given the building's disrepair, it intended to initiate foreclosure proceedings against Crestview. In March 2001, Crestview and the City settled the state action, agreeing that Crestview would repair 378 building code violations and the City would withdraw its demolition claims and its claim for unpaid fees. The state court then entered an order approving the settlement.

In September 2001, Crestview filed a complaint in federal court, naming the following parties as defendants: HUD;

HUD employees Margarita Maisonet, Gregory Gustin, and Edward Hinsberger;[1] the City; Mayor Donald Green; Terry Lewis, director of the City's Code Enforcement; and Tony Perry, owner of the property adjoining Crestview. Count I of the complaint sought damages for discriminatory housing practices pursuant to the Fair Housing Act, 42 U.S.C. § 3613, ("FHA"). Counts II through V alleged that the defendants conspired to violate Crestview's civil rights pursuant to the federal civil rights statutes, 42 U.S.C. §§ 1981, 1982, 1983, and 1985.

The district court dismissed Crestview's complaint, finding that the *Rooker-Feldman* doctrine precluded the court from exercising jurisdiction over Crestview's claims. With respect to the federal defendants, the district court also found that subject matter jurisdiction was lacking, reasoning that (1) the FHA does not provide for a right of action against the federal defendants and (2) Crestview's complaint alleged that the federal defendants were doing their jobs, but §§ 1981, 1982, 1983, and 1985 do not provide a jurisdictional basis for suits against HUD or its employees acting under the color of federal law. The district court also alternatively noted that even if jurisdiction existed, the claims should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

On appeal, Crestview asserts that the district court's finding that the *Rooker-Feldman* doctrine precluded the court from exercising jurisdiction was erroneous. Crestview does not, however, challenge the district court's separate rationale for declining to exercise subject matter jurisdiction over the federal defendants and accordingly, Crestview has waived its challenge regarding the dismissal of the federal defendants. *See Duncan v. City of Wis. Dep't of Health and Family Servs.*,

---

[1] HUD and its employees are referred to throughout as the "federal defendants."

166 F.3d 930, 934 (7th Cir. 1999) (stating that "a party must develop any arguments it wishes this court to consider in its appellate brief, or they will be deemed waived or abandoned"). On appeal, Crestview also asserts that, after finding itself without jurisdiction, the district court should not have proceeded to decide the merits of the case by alternatively dismissing the complaint for failure to state a claim. Finally, Crestview argues that the district court abused its discretion by declining to grant Crestview leave to file an amended complaint, which Crestview contends might have cured any jurisdictional deficiencies.

## II.  Analysis

### A.  Subject Matter Jurisdiction

We first consider whether the *Rooker-Feldman* doctrine bars the district court, and indeed this court, from exercising subject matter jurisdiction over this matter. The doctrine, which emerged from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), prohibits the inferior federal courts from reviewing state court decisions. *Zurich American Ins. Co. v. Superior Court for the State of California*, 326 F.3d 816, 821 (7th Cir. 2003). It is a jurisdictional doctrine premised upon the fact that, because federal district courts are courts of original jurisdiction, lower federal courts are not authorized to review appeals from state court judgments except, of course, where Congress has explicitly authorized such collateral review. *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). Instead, "only the Supreme Court has appellate jurisdiction over the civil judgments of state courts." *Id.* We review de novo a district court's application of the *Rooker-Feldman* doctrine. *Zurich*, 326 F.3d at 821.

To assess whether the *Rooker-Feldman* doctrine is applicable, "the fundamental and appropriate question to ask is

whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction." *Garry*, 82 F.3d at 1365; *see also Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir. 1996) (The *Rooker-Feldman* doctrine asks "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim."). Likewise, if the federal injury is "inextricably intertwined" with the state court judgment, *Rooker-Feldman* bars the federal action. *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir. 1993). But, as the "inextricably intertwined" inquiry is a difficult one, "the crucial point is whether 'the district court is in essence being called upon to review the state-court decision.'" *Id.* at 754 (quoting *Feldman*, 460 U.S. at 483-84 n.16). For *Rooker-Feldman* purposes, a "state court approved settlement agreement is a judgment or decision. . . ." *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 528 n.5 (7th Cir. 2000).

Each count of Crestview's federal complaint alleges that, as a result of a conspiracy involving defendants, it was injured in that it was "forced to defend *unsubstantiated* lawsuits, and excessively harsh administrative actions. . . ." (emphasis added). Thus, in essence, Crestview is challenging as baseless the state court order requiring Crestview to cure the building code violations. After all, Crestview's alleged injury—having to defend unsubstantiated lawsuits— was only complete after the state court entered the order and thereby made an implicit finding that the suit was not unsubstantiated. *See Garry*, 82 F.3d at 1368 (finding plaintiffs' claim that defendants brought a state condemnation action against them due to political retaliation barred by *Rooker-Feldman*, as "the injury alleged was only complete when the state court actually condemned the property").

A finding by the district court that defendants did, as Crestview alleges, conspire to bring unsubstantiated law-

suits would undermine the state court's implicit holding that the state action was justified. *See Shooting Point v. Cumming*, 368 F.3d 379, 384 (4th Cir. 2004) (finding that *Rooker-Feldman* precluded jurisdiction over plaintiff's claim that state transportation regulations were selectively enforced against plaintiff, as a "district court finding of selective enforcement . . . would clearly contravene the state court's [implicit] judgment" that plaintiff was "properly subject to the [ ] regulations"). As this court has consistently made clear, the *Rooker-Feldman* doctrine prohibits federal courts from entertaining such attempts to undo state court decisions. *See, e.g., Wright v. Tackett*, 39 F.3d 155, 157 (7th Cir. 1994) (finding *Rooker-Feldman* prohibited §§ 1983, 1985, and 1986 action alleging conspiracy to violate plaintiff's civil rights by initiating a foreclosure proceeding, as plaintiff essentially sought review of "state court's denial of his requests to intervene in the foreclosure actions"). That this suit was cast as a civil rights action is of no consequence. *See Ritter*, 992 F.2d at 754 (citation omitted) ("It is settled that 'a plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action.' "). Accordingly, we agree with the district court's determination that the *Rooker-Feldman* doctrine operates as a jurisdictional bar to Crestview's suit in federal court.

Having found that we, and the district court, lack jurisdiction to entertain the merits of this appeal, we decline to consider the propriety of the district court's alternative conclusion that Crestview failed to state a claim under Rule 12(b)(6). *See State of Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further.").

B.   The Amended Complaint

For the sake of completeness, we consider Crestview's argument that the district court abused its discretion by declining

to allow Crestview leave to amend its complaint. Crestview intimates that it could have overcome any potential juris-dictional defects had the district court granted it leave to amend. A brief overview of the procedural history regarding the complaint is helpful. In early December 2001, shortly after Crestview initiated this action, the federal and the City defendants each filed motions to dismiss Crestview's claim. Defendant Tony Perry, however, did not file such a motion. The district court gave Crestview until January 10, 2002 to respond to the motions to dismiss. On January 10, Crestview instead filed a motion for an extension of time to file either a response or an amended complaint. The district court granted Crestview's motion, extending the deadline until January 22, 2002. On January 22, Crestview once again filed a motion for an extension of time to respond to the motion to dismiss by filing an amended complaint. On February 5, 2002, the court granted both motions to dismiss. The following day, the court denied Crestview's January 22 request for an extension of time to respond to the motion to dismiss.

Shortly thereafter, on February 15, 2002, Crestview filed a motion pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the judgment and seeking leave to file an amended complaint. Crestview did not, however, attach its proposed amended complaint or explain in its motion how it proposed to alter the complaint. Instead, when the district court considered Crestview's motion at a February 28, 2002 hearing, Crestview attempted to submit its proposed amended complaint as an exhibit to the motion to reconsider, and the court denied its request. In an August 22, 2002 order, the district court also denied the motion to reconsider.

We review a district court's denial of a request for leave to amend for an abuse of discretion. *Indiana Funeral Dirs. Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003). Federal Rule of Civil Procedure 15(a) provides that a party may amend its complaint once as a matter of course before a responsive pleading is filed. *Camp v. Gregory*, 67

F.3d 1286, 1289 (7th Cir. 1995). "A motion to dismiss does not constitute a responsive pleading for purposes of Rule 15(a); thus, an order dismissing the original complaint normally does not eliminate the plaintiff's right to amend once as a matter of right. . . . If final judgment is entered dismissing the case, however, the plaintiff loses that right." *Id.* After final judgment has been entered, a plaintiff may amend with leave of the court following a motion to set aside the judgment under Rule 59(e) or Rule 60(b). *Sparrow v. Heller*, 116 F.3d 204, 205 (7th Cir. 1997).

Here, the defendants filed a motion to dismiss, but never filed a responsive pleading. Moreover, although the district court (encouraged by Crestview) was under the mistaken impression that its February 5, 2002 order dismissing the complaint was a final order, in fact, it was not. After all, when the Rule 59(e) motion was filed, the district court had not yet dismissed Crestview's claim against defendant Tony Perry.[2] *See* Fed. R. Civ. P. 54(b). Given this procedural posture, Crestview's general right to amend its complaint once as a matter of course had not yet been extinguished when Crestview requested leave to amend. But the right to amend as a matter of course is not absolute. *Perkins v. Silverstein*, 939 F.2d 463, 471-72 (7th Cir. 1991). Rather, a "court may deny leave to amend if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." *Id.* at 472; *see also Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist.*, 133 F.3d 1054, 1057 n.4 (7th Cir. 1998) (recognizing exception to right to amend once as a matter of course). A contrary holding "would impose upon the defendants and the courts the arduous task of responding to an obviously futile gesture on the part of the plaintiffs." *Perkins*, 939 F.2d at 472.

---

[2] The district court granted Perry's motion to dismiss on July 7, 2003, citing *Rooker-Feldman*. Final judgment was entered in this case the same day.

Because Crestview did not attach its proposed amended complaint to its motion for reconsideration or take the necessary steps to make its proposed amendment a part of the record on appeal, we cannot meaningfully assess whether its proposed amendment would have cured the deficiencies in the original pleading. *See Harris v. City of Auburn*, 27 F.3d 1284, 1287 (7th Cir. 1994) ("[T]he failure to tender an amended complaint with a motion to alter judgment may indicate a lack of diligence or good faith."). Accordingly, we cannot say that the district court's denial of Crestview's request for leave to amend constituted an abuse of discretion. To hold otherwise would allow Crestview to benefit both from inducing the district court into believing that its order dismissing the complaint was a final judgment and also from not making its proposed amended complaint part of the record on appeal. *See Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995) ("Ordinarily a party will not be heard to complain about an erroneous ruling that he himself precipitated.").

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's order dismissing the case for lack of subject matter jurisdiction.

A true Copy:

    Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*