In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 06-3803

STEPHEN D. HEMMER, D.V.M.,

*Plaintiff-Appellant,*

*v.*

INDIANA STATE BOARD OF ANIMAL
HEALTH,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Indiana, New Albany Division.
No. 05 C 152—**Sarah Evans Barker**, *Judge.*

_____

ARGUED FEBRUARY 28, 2008—DECIDED JULY 9, 2008

_____

Before FLAUM, MANION, and EVANS, *Circuit Judges*.

FLAUM, *Circuit Judge*. Stephen Hemmer is a veterinarian employed by the Indiana State Board of Animal Health ("ISBOAH"). He was accused of violating certain employee procedures. After a severe motorcycle accident that rendered him disabled, he attended a hearing with his employer regarding the issue of whether he could be fired for cause on account of his failure to follow these procedures. Hemmer was discharged, and he appealed this decision to a state agency, and then the state trial court, where he argued that he was denied due process

because, among other things, he was mentally incapacitated during the hearings. The Indiana Court of Appeals subsequently ruled that the state trial court—which agreed that Hemmer was denied due process—did not have jurisdiction to hear his case. Hemmer then decided to file a complaint in federal district court, again arguing that he was denied due process. The district court determined that it was precluded from hearing the claim because it was "inextricably intertwined" with a prior state court judgment. Because we find that the effect of the Indiana Court of Appeals decision was to void the prior state court judgment, we reverse.

## I. Background

Hemmer worked in the Indiana State Meat and Poultry Inspection Service for approximately 18 years before he was terminated on January 3, 1999. This division had a particular set of procedures for signing in and out and for submitting travel vouchers. In June 1997, Hemmer's supervisor, Dr. Dimmick, sent him a note explaining that he was not following protocol with respect to these procedures, and that if he did not correct his behavior, he might be subjected to a three day suspension. Almost contemporaneous with receiving this note, Hemmer was receiving re-training on these issues. He went through this re-training successfully (and amicably), and the record does not reflect any further infractions vis-à-vis these policies.

Hemmer was on the road quite a bit as a part of his job because he was an "area supervisor," which meant that he had to travel throughout Southern Indiana to supervise the meat inspectors assigned by ISBOAH to each

plant. On October 7, 1997, during the course of his employment, he was involved in a serious motorcycle accident. He was smashed by a hit-and-run motorist and soared 100 feet in the air before landing. The state trial court summarized his injuries as follows:

> [H]e sustained severe head trauma, neck and back injuries, internal bleeding, a broken left arm and thorax, abdominal injuries, multiple abrasions and contusions, and multiple sprains, and over the course of the next year received ongoing treatment from a neurologist, an orthopedic, a urologist, a neuropsychologist, a clinical psychologist, a cognitive retraining expert, and radiologists.

The injuries took a toll on Hemmer's cognitive abilities, and caused short-term memory problems as well as post-traumatic brain syndrome. His physician recommended that he stay on sick leave and not return to work. Hemmer was on Paxil and Neurontin, and his condition worsened. Three months after the accident, the Social Security Administration deemed that he was totally disabled due to the accident.

Nevertheless, on November 25, 1997, ISBOAH (through its officer Dr. Marsh) sent Hemmer a memorandum notifying him of a predeprivation meeting that was to occur on December 3, 1997. Pursuant to Indiana Code § 4-15-2-34, Hemmer could only be dismissed from his employment for cause. The memorandum informed Hemmer that he could be accompanied by a "non-participating witness" and that ISBOAH was considering disciplinary action including the possibility of termination due to the "failure to sign in and out of plants . . . as required by division policy . . . [and] the falsification of travel vouchers." The hearing was rescheduled for a couple of weeks

later, and on December 18, 1997, Dr. Lutz (Hemmer's primary care physician) sent Dr. Marsh a letter indicating that Hemmer should not attend the hearing on account of mental confusion. Ultimately, the predeprivation hearing took place on January 5, 1998. Hemmer contravened his doctor's advice and attended. Observers claim that he was not fully aware of the gravity of the hearing, was not allowed to bring witnesses, was confused, and had difficulty putting details together. In fact, Mr. Tyron, the human resources director who caused Hemmer to be investigated in the first place, stated that:

> I would have recommended that knowing that Dr. Hemmer was totally disabled and probably would not come back to work that we would have probably left it . . . probably would not have done anything.

Hemmer was allowed to file written materials following the hearing, but was only able to do so with assistance from another physician, Dr. Hicks, who knew very little regarding the facts involved here. Dr. Hicks himself testified that he did not feel that it was necessary to do much research in this matter because he thought that Hemmer would only be subject to a three-day suspension for any discrepancies in his forms. It should be noted that all of the evidence that ISBOAH used against Hemmer came from forms pre-dating the June 1997 note from Dr. Dimmick. In total, there were nine "suspect vouchers" after 18 years of service. The state trial court did not determine that these vouchers were actually fraudulent in any way, particularly since there were witnesses who saw Hemmer at the various plants in question. Most witnesses testified that Hemmer was an above-average to outstanding employee.

After the hearing, ISBOAH issued a Notice of Disciplinary Action on January 20, 1998, suspending Hemmer for 30 days without pay pending termination. This was based on his failure to sign in and out of plants and falsification of travel documents. Hemmer then filed suit in federal court, claiming that ISBOAH violated the Americans with Disabilities Act and the Age Discrimination in Employment Act when it terminated his employment. The district court ruled, in November 2000, that ISBOAH was a state agency and thus was not amenable to suit under the Eleventh Amendment. While the suit was pending in federal court, Hemmer also appealed ISBOAH's decision to the State Employee's Appeals Commission ("SEAC") on April 8, 1998. The SEAC conducted two hearings and issued its decision in favor of ISBOAH on June 25, 1999. They found that ISBOAH's predeprivation procedures were adequate. Pursuant to the Administrative Orders and Procedures Act, Indiana Code § 4-21.5-5-1, *et seq.*, Hemmer appealed the SEAC's decision to the Gibson Circuit Court (the state trial court). That court held that "[p]laintiff had been deprived of his constitutionally protected rights to due process, and that the termination was wrongful, and not based on sufficient evidence." ISBOAH then filed an appeal with the Indiana Court of Appeals which, on August 18, 2004, reversed the lower court judgment and found that it did not have jurisdiction over Hemmer's claim because he failed to timely file the agency record with the state court as required by the Administrative Orders and Procedures Act.[1]

---

[1] Indiana Code § 4-21.5-5-13(a) provides:

Within thirty (30) days after the filing of the petition, or within further time allowed by the court or by other law, the

(continued...)

Afterwards, Hemmer filed a petition for transfer to the Indiana Supreme Court, which was denied on January 27, 2005.

Hemmer subsequently refiled his case in federal district court alleging that ISBOAH violated his federal due process rights. ISBOAH filed a motion to dismiss arguing that the court was precluded from hearing Hemmer's claims because they were "inextricably intertwined" with a state court judgment and were therefore barred by the *Rooker-Feldman* doctrine. The district court agreed and entered judgment in favor of ISBOAH on September 15, 2006. This appeal followed.

## II. Discussion

The single issue before this Court is whether the district court was precluded from hearing Hemmer's case on account of the *Rooker-Feldman* doctrine. We review the district court's decision to grant ISBOAH's motion to dismiss de novo. *Johnson v. Martin*, 943 F.2d 15, 16 (7th

---

[1] (...continued)

    petitioner shall transmit to the court the original or a certified copy of the agency record for judicial review of the agency action, consisting of:

        (1) any agency documents expressing the agency action;

        (2) other documents identified by the agency as having been considered by it before its action and used as a basis for its action; and

        (3) any other material described in this article as the agency record for the type of agency action at issue, subject to this section.

Cir. 1991). Given the posture, we view the complaint in the light most favorable to Hemmer. *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).

The *Rooker-Feldman* doctrine precludes federal courts from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). As a general matter, federal district court jurisdiction is original; only the Supreme Court has been empowered by Congress to exercise appellate authority to reverse or modify a state court judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923); *see also* 28 U.S.C. § 1257. Under this doctrine, federal courts are precluded from hearing cases where the federal action is "inextricably intertwined" with the state court judgment. *Richmond v. Joseph Care Center West*, 190 F.3d 500, 511 (7th Cir. 1999); *Whitford v. Reed*, 155 F.3d 671, 674 (3d Cir. 1998) ("*Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling.").

The district court analyzed the issue as follows: (1) Hemmer filed in state court; (2) he lost in state court, thereby rendering him a "state-court loser"; (3) his due process claims are essentially the same as they were in state court; (4) thus his claims are "inextricably intertwined" with the state court judgment, and federal courts are precluded from hearing his case under *Rooker-Feldman*. The error here occurs at step two—why is Hemmer a state-court loser? He actually won in state court at the trial court level. The Indiana Court of Appeals simply ruled that the trial court did not have

subject matter jurisdiction over the case because Hemmer did not file certain papers on time with the court. There was no ruling on the merits in state court where Hemmer lost. In fact, the only court to actually rule on the merits of his case ruled in his favor. But the Indiana trial court decision is most appropriately viewed as if it never happened. The court never had the power to hear the case in the first place. From this perspective, Hemmer is not in any way a state court loser. A federal district court ruling in his favor or against him on the merits in no way implicates an Indiana state court decision, because the Indiana state courts only ruled that they did not have the power to hear the case.

This precise procedural scenario has not presented itself before this Court, but a close analogue has come up in the Third Circuit. There, in *Gulla v. North Strabane Township*, 146 F.3d 168 (3d Cir. 1998), plaintiffs appealed an adverse administrative decision (as we have here) to the state trial court. The court held that, under Pennsylvania law, the plaintiffs lacked standing to challenge the decision below. The district court in *Gullas* held that the federal claims were barred by the *Rooker-Feldman* doctrine, and the Third Circuit reversed:

> In this case, we conclude that the Gullas are not precluded from bringing their federal claims because the state court could not and did not adjudicate the merits of their constitutional claims. Rather, the state court noted that the Gullas lacked standing to raise their constitutional claims in an appeal of the Board's subdivision decision. Since the Gullas could not obtain an adjudication of their claim in state court, they are not precluded from raising their constitutional claims in the federal forum.

*Id.* at 173.

Similarly, in this case, Hemmer could not obtain an adjudication of his claims in state court because the Indiana courts ruled that they did not have the power to hear his case. Therefore, there was no decision on the merits that would cause the federal district court's ruling one way or the other to become "inextricably intertwined" with a state court judgment. True, the Indiana trial court did mistakenly reach the merits of Hemmer's claim, and ruled in his favor. But the subsequent Indiana Court of Appeals decision—which concluded that there was a lack of subject matter jurisdiction—had the effect of *voiding* the lower court judgment. The appeals court even directly stated that under Indiana law, the "absence of subject matter jurisdiction . . . renders a judgment void and open to collateral attack." *Indiana State Bd. of Animal Health v. Hemmer*, No. 26A01-0309-CV-345, slip op. at 3 (Ind. App. Aug. 18, 2004); *see also State ex rel. Hight v. Marion Superior Court*, 547 N.E.2d 267, 269 (Ind. 1989). Because the Indiana trial court decision was voided for lack of subject matter jurisdiction, the state-court slate is wiped clean.

This leaves Hemmer in the position of having filed his federal district court complaint when the only relevant prior history was a loss in state agency proceedings. The parties did not raise this issue, but the question remains whether Hemmer counts as a state-court loser when he lost in his state administrative agency proceedings. The Supreme Court has answered this question in the negative. In *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002), the Court declared that the *Rooker-Feldman* "doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency." *Id.* at n.3. Hence, the district court is not precluded from

hearing Hemmer's case, or deciding for or against him, even though a state administrative agency has already ruled against him.

### III. Conclusion

For the forgoing reasons, we REVERSE the district court's ruling and REMAND for further proceedings consistent with this opinion.