In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 16-3374

AMIR JAKUPOVIC,

*Plaintiff-Appellant*,

*v.*

MARK C. CURRAN, JR., *et al.*,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-03636 — **Sharon Johnson Coleman**, *Judge*.

———————————

ARGUED FEBRUARY 8, 2017 — DECIDED MARCH 10, 2017

———————————

Before WOOD, *Chief Judge*, FLAUM, *Circuit Judge*, and
CONLEY, *Chief District Judge*.[*]

FLAUM, *Circuit Judge*. Amir Jakupovic was charged in Lake
County, Illinois with telephone harassment. Before trial, the
state court ordered that Jakupovic first be detained and
then released on electronic surveillance. Jakupovic alleges

———————————

[*] Of the Western District of Wisconsin, sitting by designation.

that various state officials acted unlawfully in refusing to release him on electronic surveillance because he lacked a Lake County residence. The district court dismissed Jakupovic's claims with prejudice. We conclude the claims are jurisdictionally barred and vacate and remand with instructions to dismiss without prejudice.

## I. Background

Jakupovic resided in Cook County, Illinois. In September 2015, Jakupovic's then-girlfriend filed a domestic battery report against him in Cook County. Around the same time, the girlfriend's mother filed a telephone harassment report against Jakupovic in Lake County. On September 25, the State charged Jakupovic with telephone harassment in Lake County. The trial court released Jakupovic after his brother posted bond, and, on October 22, Jakupovic pled not guilty. The trial court ordered that Jakupovic undergo an Ontario Domestic Assault Risk Assessment ("ODARA"), pursuant to 725 Ill. Comp. Stat. 5/110-5(f). On November 17, the trial court reviewed the ODARA report and ordered that Jakupovic first be taken into custody and then placed under pre-trial electronic surveillance.

The Lake County Sheriff's Department did not release Jakupovic under electronic surveillance. As alleged, the department required pre-trial detainees to have a Lake County residence in order to be monitored electronically. Lacking such a residence, Jakupovic failed to meet this condition. The next day, on November 18, Jakupovic filed an emergency motion, arguing that the electronic monitoring condition on his bond could not be satisfied because he was not a resident of Lake County, and that, as a result, he could be subject to indefinite custody. The trial court denied Jakupovic's motion. It

then refused to reconsider the order, concluding that having a Lake County residence for the purposes of electronic monitoring was one of the conditions of Jakupovic's bond and his inability to meet that condition was insufficient grounds for reconsideration. So the Lake County Sheriff's Department continued to detain Jakupovic. Shortly thereafter, Jakupovic filed a motion to modify his bond conditions. The trial court scheduled a hearing for November 25, but Jakupovic pled guilty on November 23. Jakupovic did not file any appeals in the state courts.

In March 2016, Jakupovic sued Mark Curran (Lake County Sheriff and Director of the Lake County Jail), Terrence Barrett (the jail's Pretrial Unit Manager), Christine Hecker (Lake County's Principal Probation Officer), and Joseph Fusz (a Lake County Assistant State's Attorney) under 42 U.S.C. § 1983. Jakupovic alleged that his six-day detainment violated the Eighth and Fourteenth Amendments and constituted false imprisonment under Illinois law. The district court granted defendants-appellees' motion to dismiss Jakupovic's complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). This appeal followed.

## II. Discussion

We review a district court's grant of a motion to dismiss de novo. *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382 (7th Cir. 2016) (citation omitted). Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To properly state a claim, a plaintiff's complaint must contain allegations that plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chi.*, 810 F.3d 476, 480

(7th Cir.), *cert. denied sub nom. Kubiak v. City of Chi., Ill.*, 137 S. Ct. 491 (2016) (citation and internal quotation marks omitted). "We accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of [appellants]." *Id*. at 480–81 (citation omitted).

"[W]e are required to consider subject-matter jurisdiction as the first question in every case, and we must dismiss this suit if such jurisdiction is lacking." *Aljabri v. Holder*, 745 F.3d 816, 818 (7th Cir. 2014) (citing *Ill. v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998); Fed. R. Civ. P. 12(h)(3)). We conclude that, under the *Rooker-Feldman* doctrine, we have no jurisdiction here. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923); *D.C. Cir. v. Feldman*, 460 U.S. 462, 486 (1983). Simply put:

> Lower federal courts are not vested with appellate authority over state courts. The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over cases brought by state court losers challenging state court judgments rendered before the district court proceedings commenced. The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it.

*Sykes v. Cook Cty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741–42 (7th Cir. 2016) (citations omitted); *see also Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 603 (7th Cir. 2008) ("A state litigant seeking review of a state court judgment must follow the appellate process through the state court system and then directly to the United States Supreme Court.") (citation omitted). The initial inquiry, then, "is whether the federal plaintiff seeks to set

aside a state court judgment or whether he is, in fact, presenting an independent claim." *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) (citation and internal quotation marks omitted). To make this determination, we ask whether the federal claims either "directly" challenge a state court judgment or are "inextricably intertwined" with one. *Id.*

Claims that directly seek to set aside a state court judgment are *de facto* appeals that are barred without further analysis. *Id.* But even federal claims that were not raised in state court, or that do not on their face require review of a state court's decision, may still be subject to *Rooker-Feldman* if those claims are inextricably intertwined with a state court judgment. *Sykes*, 837 F.3d at 742 (citation omitted); *see also Feldman*, 460 U.S. at 482 n.16. While the latter concept is a "somewhat metaphysical" one, the crucial point is whether the district court is essentially being called upon to review the state court decision. *Taylor*, 374 F.3d at 533 (citation and internal quotation marks omitted). Ultimately, the "determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Sykes*, 837 F.3d at 742; *see also Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999). If we determine that a claim is inextricably intertwined with a state court judgment—that is, that the former indirectly seeks to set aside the latter—then we must determine whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings. *Taylor*, 374 F.3d at 533 (quoting *Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002)). If so, the claim is barred.

Notably, the *Rooker-Feldman* doctrine is a narrow one. *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "[F]ederal jurisdiction does not terminate automatically on the entry of judgment in a state court," *Sykes*, 837 F.3d at 742 (citation omitted), as *independent* claims are jurisdictionally firm, *Kelley*, 548 F.3d at 603 (citation omitted). For a federal claim to be barred, "there must be no way for the injury complained of by [the] plaintiff to be separated from [the] state court judgment." *Sykes*, 837 F.3d at 742 (citations omitted).

Jakupovic's claims do not directly seek to set aside the state trial court's judgments regarding his electronic-surveillance bond condition. Thus, we must determine whether his claims are inextricably intertwined with those judgments, and if so, whether he had a reasonable opportunity to raise these issues in state court proceedings.

## A. Inextricably Intertwined

Jakupovic argues that the *Rooker-Feldman* doctrine does not bar his claims, because he does not challenge the *state court's* judgments keeping him detained for lack of a Lake County residence. Instead, he stresses, he challenges *defendants-appellees'* "procedure which forced the Plaintiff to unnecessarily be detained in jail for [six] days." However, when "the injury is executed through a court order, there is no conceivable way to redress the wrong without overturning the order of a state court. *Rooker-Feldman* does not permit such an outcome." *Sykes*, 837 F.3d at 743.

*Kelley* and *Sykes* are instructive. In *Kelley*, the plaintiff argued that it was not the state court's award of attorney's fees that caused his injury, but rather the attorneys' preceding

fraudulent misrepresentations. 548 F.3d at 605. We concluded, however, that the plaintiff's claims were inextricably inter-twined with the state court's judgment, despite the fact that the allegedly unlawful actions occurred prior to that judg-ment, because "[w]e could not determine that defendants' representations … related to attorney fees violated the law without determining that the state court erred by issuing judgments granting the attorney fees." *Id*. Similarly, in *Sykes*, the plaintiff asserted that her Americans with Disabilities Act claims were independent from the state judge's *order* denying the plaintiff's motion for reasonable accommodations, be-cause they focused on the state judge's wrongful *conduct*—in-terrogating the plaintiff about her service dog and banning the dog from the courtroom. 837 F.3d at 742. Nevertheless, alt-hough the judge's conduct preceded the order, we found that we lacked jurisdiction to hear the claims, because "[i]f the judge violated the ADA by engaging in impermissible ques-tioning or wrongly banning [the dog] from her courtroom, those alleged violations were also the basis of her order." *Id*. at 743.

Jakupovic's claims meet the same fate. As alleged, defend-ants-appellees executed the state court's bond condition and order, and detained Jakupovic for six days. To find defend-ants-appellees' conduct unlawful, we would have to deter-mine that the state court erred in keeping Jakupovic detained for lacking a Lake County residence. As such, Jakupovic's claims are inextricably intertwined with the state court's judg-ments.

Jakupovic's reliance on *Burke v. Johnston*, 452 F.3d 665 (7th Cir. 2006), is misplaced. There, the state court denied the plaintiff jail credit that he believed he was owed; but he did

not challenge this decision, as he ultimately got the credit he sought by raising the issue with the state's department of corrections. *Id*. at 668. The plaintiff instead filed a federal lawsuit against Department-of-Corrections officials for allegedly taking too long to administratively grant the plaintiff his credit. *Id*. That issue was neither presented to nor decided by the state court, so the plaintiff's claim was not inextricably intertwined with any state court judgment. *Id*. Thus, we concluded, *Rooker-Feldman* presented no jurisdictional bar. *Id*. Here, unlike in *Burke*, the argument Jakupovic now presents is in essence what he argued below: The residence requirement may lead to indefinite detention. And the state court rejected this argument; so defendants-appellees executed the state court's bond condition and order and kept Jakupovic detained. Although Jakupovic alleges that defendants-appellees detained him under their own residence "policy," we cannot find that policy unconstitutional without also concluding that the state court's judgments, ordering the same residence requirement and detainment, were unlawful. *See Kelley*, 548 F.3d at 605. So Jakupovic's claims and the state court's judgments are inextricably intertwined.

## B.  Reasonable Opportunity to Raise in State Court

Although Jakupovic's claims are inextricably intertwined with the state court's judgments, the claims are barred under *Rooker-Feldman* only if he had a reasonable opportunity to raise the issues in state court proceedings. *See Taylor*, 374 F.3d at 534–35; *see also Kelley*, 548 F.3d 605–06. "The 'reasonable opportunity' inquiry focuses not on ripeness, but on difficulties caused by 'factor[s] independent of the actions of the opposing part[ies] that precluded' a plaintiff from bringing federal

claims in state court, such as state court rules or procedures." *Taylor*, 374 F.3d at 534–35 (quoting *Long*, 182 F.3d at 558).

Jakupovic had at least three opportunities to raise in state court the issues he now raises on appeal. First, he filed an emergency motion challenging the state court's bond condition, alleging that it could lead to indefinite custody. The court denied that motion. Second, Jakupovic asked the state court to reconsider its ruling on the bond condition, but the court denied that motion, too, and explicitly ordered that Jakupovic continue to be detained because he did not have a Lake County residence. Finally, Jakupovic filed a motion to modify his bond conditions, and the state court scheduled a hearing for one week later, on November 25; before the hearing, however, Jakupovic pled guilty. That Jakupovic had a reasonable opportunity to present to the state court claims that are inextricably intertwined with that court's judgments deprives us of subject-matter jurisdiction.

### C.  Dismissal Without Prejudice

The district court dismissed Jakupovic's claims with prejudice. Because we conclude that Jakupovic's claims are jurisdictionally barred under *Rooker-Feldman*, the complaint should be dismissed without prejudice. *See Frederiksen v. City of Lockport*, 384 F.3d 437, 438–39 (7th Cir. 2004) ("When the *Rooker-Feldman* doctrine applies, there is only one proper disposition: dismissal for lack of federal jurisdiction. A jurisdictional disposition is conclusive on the jurisdictional question: the plaintiff cannot re-file in federal court. But it is without prejudice on the merits, which are open to review in state court to the extent the state's law of preclusion permits." (citing *T.W. v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997))).

### III. Conclusion

For the foregoing reasons, we VACATE the judgment of the district court and REMAND with instructions to dismiss Jakupovic's claims without prejudice for lack of subject-matter jurisdiction.