In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-3260

JAMIE SWARTZ, *et al.*,

*Plaintiffs-Appellants*,

*v.*

HEARTLAND EQUINE RESCUE, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 16-cv-00095 — **Tanya Walton Pratt**, *Judge*.

ARGUED SEPTEMBER 25, 2019 — DECIDED OCTOBER 11, 2019

Before FLAUM, SYKES, and SCUDDER, *Circuit Judges*.

FLAUM, *Circuit Judge*. The plaintiffs, Jamie and Sandra
Swartz, allege a conspiracy among multiple state and private
defendants to deprive them of their property, namely, several
goats and horses. The district court dismissed the private de-
fendants and later entered summary judgment in favor of the
state defendants. We now vacate the district court's rulings
and remand this case for dismissal due to a lack of federal

subject matter jurisdiction. The Swartzes' claims are inextricably intertwined with state court judgments, requiring dismissal under the *Rooker-Feldman* doctrine.

## I. Background

Between 2011 and 2013, the Swartzes acquired several horses, goats, and a donkey for keeping on their hobby farm in Washington County, Indiana. In April 2013, the county's animal control officer, defendant Randy Lee, contacted defendant Dr. Jodi Lovejoy (a veterinarian with the Indiana State Board of Animal Health) to ask for her help evaluating a thin horse he claimed to have observed on the Swartzes' property.

Lee and Lovejoy visited the Swartzes' farm to evaluate the animals on four occasions, in May 2013, January 2014, February 2014, and June 2014. On each occasion, Lovejoy assessed the horses and goats using body condition scoring systems that categorized them based on the amount of muscle and fat on their bodies. Lovejoy kept detailed notes of each visit and created Animal Case Welfare Reports for the animals. Following the fourth visit, on June 4, 2014, Lovejoy reported a significant decline in the animals' welfare and expressed concerns about the conditions in which the goats were being kept. Lovejoy stated in her report that it was unlikely the Swartzes were able or willing to adequately care for the animals and that the livestock was in immediate jeopardy.

On June 13, 2014, Lee used Lovejoy's report to seek (in a standard, ex parte proceeding) a finding of probable cause to seize the animals, stating that Lee "has been investigating the welfare of certain animals" and "believes that probable cause

exists that the crime of neglect of a vertebrate animal has been committed and that pursuant to IC 35-46-3-6 he has the authority to seize said animals … ." The Superior Court of Washington County, Indiana determined that there was probable cause to believe animal neglect or abandonment was occurring and entered an order to seize the animals. The next day, the animals were seized from the Swartzes' farm by Lee and defendant Meghan Combs (a member of the Washington County Sheriff's Office), and individuals associated with Uplands Peak Sanctuary and Heartland Equine Rescue (organizations dedicated to caring for abandoned or neglected animals).[1]

On June 20, 2014, the state of Indiana filed three counts of animal cruelty charges against the Swartzes. (*State of Ind. v. Sandra Swartz*, Case No. 88C01-1406-CM-000325, Washington Cty. Cir. Ct.) The probable cause affidavit and order were refiled on the criminal docket the same day. The Swartzes retained counsel and were able to take their own discovery in the state court case, including deposing Lovejoy. On October 21, 2014, the state filed a motion for authority to find permanent placement for the Swartzes' animals. On January 15, 2015, both the state and the Swartzes appeared (with their counsel) to argue the motion for permanent placement. After

---

[1] Most of the remaining defendants are associated with these animal welfare groups: Michelle Pruitt is the co-owner and co-founder of Uplands, while JoClaire Corcoran, Debbie Moore, and Kelly Jo Fithian-Wicker worked under the Heartland name. The Swartzes allege that prior to the seizure, defendant Marnie Bennett trespassed on their property to inspect the feed stocks for the Swartzes' animals; they also claim that Bennett is a "close friend and confidant of" Moore and "encouraged" Moore, Combs, and Lee to seize their livestock.

that hearing, the court denied the Swartzes' motion for a probable cause hearing, noting that it had already affirmed the previous finding of probable cause when the criminal charges were filed on June 20, 2014. The court also denied the state's motion for authority to permanently place the animals at that time, instead requesting that the state's veterinarian or its designee make a recommendation concerning the disposition of the animals. On April 2, 2015, the court held a second hearing at which it ordered permanent placement of the animals for adoption. The court subsequently signed the placement order on April 14. After a hearing on August 27, 2015, at which both parties appeared by counsel, the court entered a further order requiring the Swartzes to reimburse Heartland for the care of the animals following the seizure, totaling $928 ($6,828 less the $5,900 value of the animals themselves).

The state deferred prosecuting the Swartzes as part of a pretrial diversion agreement, which the court entered in November 2015. The Swartzes agreed to pay pretrial diversion fees, not commit or attempt to commit any crimes, report to the prosecutor's office as directed, and follow the court's order regarding reimbursing Heartland for the care of the animals.

The Swartzes then filed this federal lawsuit, alleging "that the defendants and all of them, acted in concert to cause certain livestock of Plaintiffs to be seized by the Washington County Animal Control Officer on less than probable cause and distributed to Uplands Peak Sanctuary and Heartland Equine Rescue based on false information and improper diagnostic analysis contrary to the 4th and 14th Amendments … ." The district court dismissed or entered summary

judgment against the plaintiffs on all claims. The Swartzes now appeal.

## II. Discussion

Before we may review the district court's orders in this case, we first must determine whether it had subject matter jurisdiction over the Swartzes' claims given the related state court proceedings. Federal district and circuit courts generally lack jurisdiction to review the decisions of state courts. The *Rooker-Feldman* doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments … no matter how erroneous or unconstitutional the state court judgment may be. The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations." *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008) (citation and internal quotation marks omitted).

The case before us raises a facial *Rooker-Feldman* issue, because finding in favor of the Swartzes would necessarily call into question the state court's probable cause finding, placement judgment, and the terms of the Swartzes' pretrial diversion agreement. Although no party raised the *Rooker-Feldman* doctrine until appellate briefing, this Court may—indeed, must—consider it. "The *Rooker-Feldman* bar is jurisdictional; violations of it cannot be waived and thus preclude a court from considering the merits of the claim." *Lennon v. City of Carmel*, 865 F.3d 503, 506 (7th Cir. 2017).

### A. "Inextricably Intertwined" Issues

We explained the rationale and application of the *Rooker-Feldman* doctrine in *Jakupovic v. Curran*:

> Lower federal courts are not vested with appel-
> late authority over state courts. The *Rooker-Feld-*
> *man* doctrine prevents lower federal courts from
> exercising jurisdiction over cases brought by
> state court losers challenging state court judg-
> ments rendered before the district court pro-
> ceedings commenced. The rationale for the doc-
> trine is that no matter how wrong a state court
> judgment may be under federal law, only the
> Supreme Court of the United States has jurisdic-
> tion to review it. The initial inquiry, then, is
> whether the federal plaintiff seeks to set aside a
> state court judgment or whether he is, in fact,
> presenting an independent claim. To make this
> determination, we ask whether the federal
> claims either "directly" challenge a state court
> judgment or are "inextricably intertwined" with
> one.

850 F.3d 898, 902 (7th Cir. 2017) (citation and internal quota-
tion marks omitted). The Swartzes' § 1983 claims are not direct
challenges to any state court order, so to be implicated by
*Rooker-Feldman* they must be "inextricably intertwined" with
a state court judgment. *Id.* Because the injury the Swartzes
protest—the seizure and subsequent permanent placement of
their livestock—was effectuated by several orders of the Su-
perior Court of Washington County, their claims are inextri-
cably intertwined with state court judgments.

The state court's finding of probable cause and ordered
seizure of the animals produced the injury claimed by the
Swartzes. This is true even though the Swartzes now claim
that the injury originated in a conspiracy among mixed state

and private actors. To find that the defendants acted wrong-fully in seizing the animals would call into question the state court's judgment that there was probable cause the animals were being neglected under Indiana law. The same problem arises with the court's permanent placement determination, reimbursement order, and the pretrial diversion agreement: if the animals were not being neglected, there would be no basis for permanently housing them elsewhere or for requiring the Swartzes to reimburse Heartland for the animals' care.

When a state court judgment is the cause of a plaintiffs' injury, *Rooker-Feldman* bars federal review. "If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction." *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 556 (7th Cir. 2004). This is the case even when plaintiffs allege that the state court judgment was obtained through the defendants' bad faith actions. In *Crestview*, for example, the plaintiff alleged that a conspiracy among city officials and private actors led to a state court ordering plaintiff to remedy alleged building code violations. *Id.* at 554–55. Despite the plaintiff's invocation of a civil rights conspiracy, this Court held that the injuries in the complaint were the practical result of a state court judgment, and thus barred under *Rooker-Feldman*:

> Each count of Crestview's federal complaint alleges that, as a result of a conspiracy involving defendants, it was injured in that it was "forced to defend *unsubstantiated* lawsuits, and excessively harsh administrative actions...." [] Thus, in essence, Crestview is challenging as baseless the state court order requiring Crestview to cure

> the building code violations. After all,
> Crestview's alleged injury—having to defend
> unsubstantiated lawsuits—was only complete
> after the state court entered the order and
> thereby made an implicit finding that the suit
> was not unsubstantiated.

*Id.* at 556; *see also Garry v. Geils*, 82 F.3d 1362, 1368 (7th Cir. 1996) ("The plaintiffs are essentially claiming injury due to a state judgment against them—the judgment condemning a portion of the Garry property. … While the plaintiffs complain that the defendants moved the proposed ditch location as an act of political retaliation against them, the injury alleged was only complete when the state court actually condemned the property."); *Wright v. Tackett*, 39 F.3d 155, 158 (7th Cir. 1994) ("Wright may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action.") (internal quotation marks omitted).

In *Wright*, the plaintiff alleged a conspiracy of state and private actors in violation of § 1983 based on the "bald assertions" that courts ruled against him during a foreclosure, and that the private defendants "unlawfully participated in the foreclosure actions." *Id.* at 157. We held that there was no federal jurisdiction over the plaintiff's § 1983 conspiracy claims: "Although Wright's complaint presented several constitutional—albeit conclusory—claims, those claims are inextricably intertwined with the various state court determinations handed down previously." *Id.*

The Swartzes' alleged conspiracy, in which Lee, Lovejoy, and others worked in concert to give false claims of animal neglect to the court, is the type of claim routinely dismissed under *Rooker-Feldman*, as were the claims in *Crestview*, *Garry*,

and *Wright*. *See, e.g.*, *Matter of Lisse*, 921 F.3d 629, 641 (7th Cir. 2019) ("Nora's repeated fraud accusations do not change the calculus. … Federal courts do not exist to provide disappointed state-court losers a second bite at the apple."); *Mains v. Citibank, N.A.*, 852 F.3d 669, 677 (7th Cir. 2017) (holding that plaintiff's conspiracy claims were "barred by *Rooker-Feldman*, because they are dependent upon and interwoven with the state-court litigation"); *Harold v. Steel*, 773 F.3d 884, 886–87 (7th Cir. 2014) (rejecting plaintiff's contention that false statements to court could be separated from resulting order, because "[n]o injury occurred until the state judge ruled against" plaintiff); *Kelley*, 548 F.3d at 605 ("We could not determine that defendants' representations and requests related to attorney fees violated the law without determining that the state court erred by issuing judgments granting the attorney fees. … [W]e are still barred from evaluating claims, such as this one, where all of the allegedly improper relief was granted by state courts.").

Here as well, the Swartzes' alleged injury was directly caused by the state court's orders: first to seize their animals, and then to permanently place them with other owners and force the Swartzes to reimburse Heartland for their care.

### B. Reasonable Opportunity to Litigate

The *Rooker-Feldman* doctrine provides a safeguard for plaintiffs. The Swartzes must have had a "reasonable opportunity" to litigate in state court the claims they are bringing in their federal case for the bar to apply. *See Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002). The Swartzes did not argue the *Rooker-Feldman* issue substantively in their briefing but did contest whether they were ever provided reasonable opportunity to litigate the existence of probable cause to seize

their animals. Specifically, the Swartzes contend that: (1) the initial probable cause finding was ex parte; (2) under an Indiana statute, they were entitled to a post-seizure adversary hearing on probable cause; and (3) they were denied the opportunity to argue about the animals' welfare at any point. A review of the record shows that they had multiple opportunities to litigate whether the animals should have been seized, and thus *Rooker-Feldman* applies.

The ex parte nature of the initial probable cause hearing does not prevent the application of *Rooker-Feldman* because the Swartzes had other opportunities to litigate the issue. *See O'Malley v. Litscher*, 465 F.3d 799, 804 (7th Cir. 2006) (applying *Rooker-Feldman* where plaintiff had other opportunities to challenge the decision and noting that "it does not matter that the order was ex parte").[2]

First, the Swartzes were provided an effective opportunity to litigate the probable cause issue by contesting the state's

---

[2] The Swartzes argue that Indiana Code § 35-46-3-6 (the statute addressing the seizure of animals) entitled them to a post-seizure adversarial hearing on probable cause. But read in context, the statute contemplates a post-deprivation probable cause hearing only if such a hearing had not already occurred. Subsection (a) allows "[a]ny law enforcement officer" who has probable cause to believe an animal is being neglected to "take custody of the animal." No judicial hearing is required. In this case, Defendant Lee took a belt-and-suspenders approach by securing a judicial probable cause finding before attempting the seizure. This is why the state court judge denied the Swartzes' motion for a post-seizure probable cause hearing: the court had already determined that probable cause existed. *Rooker-Feldman* applies because the Swartzes had reasonable later opportunities to litigate their claims, regardless of whether they were afforded any specific statutory hearing under § 35-46-3-6.

motion for authority to permanently place the livestock. The Swartzes were represented by counsel, took part in two adversary hearings on the issue, and were able to take relevant discovery before the court entered any order, including the deposition of Lovejoy (whose allegedly false and incorrect report formed the crux of the alleged conspiracy to seize the Swartzes' animals). The court still found that its original probable cause finding was correct and that the animals should be placed elsewhere. The Swartzes could have provided their own evidence of the falsity of the animal welfare report, or evidence rebutting the state's evidence of animal neglect, but failed to do so.

Second, the Swartzes could have filed motions for reconsideration or to alert the court to new evidence, or used any other method by which litigants in Indiana may place arguments on the record. The Swartzes have not alleged any meaningful restraint on their ability to litigate in the state court.

Third, the Swartzes failed to appeal the state trial court's orders in the state appellate court, which would have constituted another reasonable opportunity to litigate whether their animals should have been seized. *See Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 901–02 (7th Cir. 2010) ("[It] is enough to demonstrate that [plaintiff] did have a 'reasonable opportunity' to pursue his due process claim in Illinois state court" where plaintiff failed to pursue right to appeal claim to Illinois Supreme Court). Indiana courts have considered appeals from disgruntled litigants whose animals were confiscated under Indiana Code § 35-46-3-6. *See, e.g.*, *Wolff v. State*, 87 N.E.3d 528, 532–34 (Ind. Ct. App. 2017); *Miller v. State*, 952 N.E.2d 292, 294–97 (Ind. Ct. App. 2011).

To be sure, there is a line of Seventh Circuit cases preserving civil rights claims in the face of allegedly improper probable cause findings due to a lack of reasonable opportunity to litigate. But these cases involved plaintiffs who lacked the Swartzes' several chances to pursue their claims in state court.

A leading case is *Brokaw*, in which the plaintiff claimed that county officials had conspired to make false claims of child neglect to justify removing her from her parent's care. 305 F.3d at 662. There, this Court reversed and remanded a lower court's dismissal under *Rooker-Feldman*, arguing that the plaintiff had no reasonable opportunity to pursue her claims regarding purportedly false neglect reports at the state level. In *Brokaw*, unlike this case, the state court proceeded under Illinois' Juvenile Court Act, which allowed the court to "consider only the question whether the minor is abused, neglected, delinquent, in need of supervision, or dependent." *Id.* at 668. Moreover, after the plaintiff had been seized, the court ordered her to remain in foster care during a hearing at which her parents were present, but not represented by counsel, allowed to speak, call witnesses, or cross-examine witnesses. *Id.* at 663. This is all contrary to the Swartzes' claims, as the Swartzes were represented by counsel, attended hearings, were allowed to testify, and took discovery.

In sum, this case should have been dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine at its outset.[3]

---

[3] The Swartzes' *pro se* complaint contains Fourth and Fourteenth Amendment claims under 42 U.S.C. § 1983. It also states that "[f]urther, the folks at Heartland have posted several libelous statements against Plaintiff disparaging their reputation … These statements were made in a malicious attempt to take and keep or distribute Plaintiffs livestock." The district court determined that the Swartzes had pleaded an Indiana state

### III. Conclusion

For the foregoing reasons, we VACATE the judgment of the district court and REMAND WITH INSTRUCTIONS to dismiss the case for lack of subject matter jurisdiction.

---

law libel claim and exercised supplemental jurisdiction over it; the libel action was dismissed on the merits. But as there was no federal subject matter jurisdiction over any claim, the district court never had jurisdiction over the libel claim. "When a district court does not have subject-matter jurisdiction over federal claims, it cannot exercise supplemental jurisdiction over any state claims." *Mains*, 852 F.3d at 679. The dismissal on the merits of the libel action, like all other dispositions in the district court, is vacated.