In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1541

JOSE ANDRADE,

*Plaintiff-Appellant,*

*v.*

CITY OF HAMMOND, INDIANA, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 19-cv-430 — **Theresa L. Springmann**, *Judge.*

ARGUED DECEMBER 10, 2020 — DECIDED AUGUST 25, 2021

Before SYKES, *Chief Judge*, and FLAUM and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge*. Appellate review of state-court judgments is reserved exclusively to the United States Supreme Court. The *Rooker-Feldman* doctrine provides the jurisdictional bar that prevents lower federal courts from improperly exercising such review. Federal cases involving claims that are "independent" from a state-court judgment, however, obviously fall outside of *Rooker-Feldman*'s purview.

In this case, Plaintiff Jose Andrade sued the City of Hammond, the Hammond Board of Public Works and Safety, and several Hammond employees for violating his due process rights when making an administrative determination regarding his rental property. Although the administrative determination was later affirmed by Indiana courts, Andrade's claims concern Defendants' actions separate from any state-court judgment. Thus, *Rooker-Feldman* does not bar federal-court jurisdiction. We accordingly reverse the contrary decision of the district court and remand this case for further proceedings.

## I. BACKGROUND

Jose Andrade owns an apartment building in Hammond, Indiana. In March 2013, the City inspected the building and issued a notice to Andrade stating that the building was unsafe and in violation of Indiana law. I.C. § 36-7-8-4. The notice led to an evidentiary hearing conducted by the Hammond Board of Public Works and Safety ("the Board"). The Board issued an order in favor of the City, but the Lake Superior Court reversed the order on appeal because Andrade had not been given proper notice of the hearing.

A year later, the City re-inspected the building and issued a new notice of violation based on unsafe conditions. The Board scheduled a hearing on this second notice of violation for January 2017. This time, Andrade received proper notice, and before the hearing, he served the City's Chief of Inspection a *subpoena duces tecum* requesting that he bring to the hearing all "regulations, ordinances, and/or statutes" that the Chief relied upon while testifying during the first hearing. The City did not comply with the subpoena.

At the hearing, the City and Andrade disputed the safety of the property, and the City's Building Commissioner and Chief of Inspections both testified to the unsafe conditions identified in the City's notice of violation.

The Board ultimately found that the building was unsafe under Indiana law and ordered Andrade to remedy the unsafe conditions by making repairs or vacating four of the five apartment units.

Andrade sought judicial review of the Board's decision in state court according to Indiana law. He argued that the Board did not afford him a fair hearing, partly because the City failed to comply with the subpoena, and that the Board, in his view, exceeded its statutory authority by making a zoning determination. In the end, the Lake Superior Court affirmed the Board, the Indiana Court of Appeals affirmed the Lake Superior Court, and the Indiana Supreme Court and United States Supreme Court both declined to review the case.

In November 2019, after exhausting the state appellate process, Andrade filed a new complaint in federal court under 42 U.S.C. §§ 1983 and 1985 against the City, the Board, and various other city officials. The complaint alleges, among other things, that the defendants violated and conspired to violate Andrade's due-process rights by making "intentional false representations of opinion testimony" before the Board, "fail[ing] to comply with a lawfully-issued subpoena without justification," and pursuing an "unannounced policy to deny subsidized residential units in more desirable neighborhoods of Hammond."

The defendants moved to dismiss, arguing that the district court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine. The district court agreed and dismissed Andrade's complaint. Andrade timely appealed.

## II. ANALYSIS

We review *de novo* the district court's decision that it lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine. *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002) (citing *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000)).

"The *Rooker-Feldman* doctrine precludes federal courts from deciding cases 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Hemmer v. Ind. State Bd. of Animal Health*, 532 F.3d 610, 613 (7th Cir. 2008) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see also Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). "The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it." *Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016) (citing *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012)); 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State … may be reviewed by the Supreme Court … .").

Only a narrow segment of cases falls outside the jurisdiction of the lower federal courts under *Rooker-Feldman*. *Exxon Mobil*, 544 U.S. at 291–92. Preclusion, comity, and other abstention doctrines will more often come into play to "allow

federal courts to stay or dismiss proceedings in deference to state-court actions." *Id.* at 284; *see also GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993).

To determine whether the *Rooker-Feldman* doctrine bars jurisdiction, we apply a two-step analysis. First, we consider whether a plaintiff's federal claims are "independent" or, instead, whether they "either 'directly' challenge a state court judgment or are 'inextricably intertwined with one.'" *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019). If they are "independent" claims, the *Rooker-Feldman* doctrine does not preclude federal courts from exercising jurisdiction over them. But if they "directly" challenge or are "inextricably intertwined" with a state-court judgment, then we move on to step two.

At step two, we determine "whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). Only if the plaintiff did have such an opportunity does *Rooker-Feldman* strip federal courts of jurisdiction.

Here, there is no question that Andrade is a "state court loser[]" who filed this action "after the state proceedings ended." *Exxon Mobil*, 544 U.S. at 281, 291.

That said, Andrade's claims fall outside of *Rooker-Feldman*'s purview at step one of the analysis. It is clear on the face of the complaint that Andrade's claims are not "direct challenges to any state court order, so to be implicated by *Rooker-Feldman* they must be 'inextricably intertwined' with a state court judgment." *Swartz*, 940 F.3d at 391 (quoting *Jakupovic*, 850 F.3d at 902).

For a federal claim to be inextricably intertwined with a state-court judgment, "'there must be no way for the injury complained of by [the] plaintiff to be separated from [the] state court judgment." *Jakupovic*, 850 F.3d at 903 (quoting *Sykes*, 837 F.3d at 742). In *Swartz*, for example, the plaintiffs' federal claims challenged the seizure of their animals, an injury that came about after the state court determined that there was probable cause to believe that there was animal neglect and directed that the animals be seized. 940 F.3d at 389–90. We found that the claims were inextricably intertwined because "the Swartzes' alleged injury was directly caused by the state court's orders." *Id.* at 392.

In contrast, Andrade's federal claims are not inextricably intertwined with a state-court judgment because the defendants' challenged conduct—for example, defying a subpoena and providing false testimony before the Board—occurred before any judicial involvement. The complaint alleges, at most, "an independent prior injury that the state court failed to remedy" and not an injury "caused by the state court judgment." *Sykes*, 837 F.3d at 742. His federal claims could exist even without *any* state-court judgment. And for that reason, the "the injur[ies] complained of by [Andrade can] be separated from [the] state court judgment." *Jakupovic*, 850 F.3d at 903 (quoting *Sykes*, 837 F.3d at 742).[1] The *Rooker-Feldman* doctrine

---

[1] Although the state courts reviewed and affirmed the administrative decision, they did so under a limited standard of review. *Utility Ctr., Inc. v. City of Fort Wayne*, 985 N.E.2d 731, 734–35 (Ind. 2013) ("Although the statute recites that the appeal shall be heard by the court de novo, this is not literally true. … '[A] review or appeal to the courts from an administrative order or decision is limited to a consideration of whether or not the order was made in conformity with proper legal procedure, is based upon substantial evidence, and does not violate any constitutional, statutory, or

accordingly does not apply, and federal courts may exercise jurisdiction over Andrade's case.

Whether the case may ultimately fail for other reasons—such as on preclusion grounds—will be for the district court to determine. *Exxon Mobil*, 544 U.S. at 293. It has jurisdiction to make that determination.

### III. CONCLUSION

We REVERSE the district court's decision that it lacked jurisdiction to hear Andrade's case, and we REMAND this matter for further proceedings.

---

legal principle.'" (quoting *City of Mishawaka v. Stewart*, 310 N.E.2d 65, 68–69 (Ind. 1974))); Ind. Code § 36-7-9-8. We therefore need not consider whether true *de novo* review by a state court could bring a federal challenge to a state administrative decision into *Rooker-Feldman*'s limited scope. *See Thana v. Bd. of License Comm'rs*, 827 F.3d 314, 321 (4th Cir. 2016) (concluding that the *Rooker-Feldman* doctrine does not bar jurisdiction over federal claims "alleging injury inflicted by actions of a state administrative agency" that were reviewed in state court).

SYKES, *Chief Judge*, concurring. I join the court's opinion. As my colleagues explain, Andrade's alleged injuries stem from the demolish-or-repair order issued by the Hammond Board of Public Works and Safety, not the judgments that upheld that order on deferential judicial review. So although preclusion doctrine may bar Andrade from relitigating the due-process claims he raises in this litigation, he is not *jurisdictionally* barred from doing so under *Rooker–Feldman*.

I write separately to amplify the reasons why that is so, and more generally, to underscore the point that the *Rooker–Feldman* doctrine was pared back to its core in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). Despite the "narrow ground" that it occupies, *id.* at 284, the doctrine continues to be applied outside its carefully circumscribed boundaries. The Supreme Court has been clear that the application of *Rooker-Feldman*'s jurisdictional bar should not be a court's first instinct when a federal lawsuit overlaps with earlier state litigation. *See Skinner v. Switzer*, 562 U.S. 521, 531–32 (2011); *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (per curiam); *Exxon*, 544 U.S. at 292–93. Yet the doctrine continues to be confused with nonjurisdictional preclusion rules.

It's worth reiterating, then, what the doctrine is (and isn't). To begin, unlike preclusion and abstention doctrines, the *Rooker–Feldman* jurisdictional bar is not grounded in respect for state courts or other comity or federalism interests. It derives from silence in several jurisdictional statutes, most prominently 28 U.S.C. § 1257. *See Exxon*, 544 U.S. at 291–92; *see also Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1291 (11th Cir. 2018) (Newsom, J., concurring) (explaining that the doctrine's "jurisdictional *restriction* rests

on … the perceived implications of other jurisdictional *grants*" (quotation marks omitted)). Specifically, § 1257(a) gives the Supreme Court jurisdiction to review the "[f]inal judgments or decrees rendered by the highest court of a State." And district courts have only "original jurisdiction" in federal-question and diversity cases. 28 U.S.C. §§ 1331, 1332. Taken together—the theory goes—these statutes by "negative implication" deny district courts "any appellate capacity" or authority to review state-court decisions. *Target Media*, 881 F.3d at 1291 (Newsom, J., concurring); *see also VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 407 (6th Cir. 2020) (Sutton, J., concurring) (explaining that "*Rooker* started as an implication" from § 1257).

The decisions that gave rise to the doctrine reflect the narrowness of that negative implication. In *Rooker* the Supreme Court held that a request to declare a state-court judgment "null and void" was "plainly not within the District Court's" jurisdiction. *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 414–15 (1923). And in *Feldman* the Court held that a district court could not consider a challenge to a bar-admission decision by the District of Columbia Court of Appeals. *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983). The evolution of the doctrine ended there; after *Feldman* the Court "never applied *Rooker-Feldman* to dismiss an action for want of jurisdiction." *Exxon*, 544 U.S. at 287; *see also Target Media*, 881 F.3d at 1291 (Newsom, J., concurring) (collecting cases and explaining that "in every instance in which the issue has arisen, the Court has found the doctrine inapplicable"). Particularly relevant to this appeal, the Court has held that "[t]he doctrine has no application to judicial review of executive action, including determinations made

by a state administrative agency." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002).

Yet for a host of reasons, *Rooker-Feldman* was often misapplied as a jurisdictional version of claim or issue preclusion. But those, of course, are merits defenses, and the Court has pushed back hard on the notion that *Rooker–Feldman* is "simply preclusion by another name." *Lance*, 546 U.S. at 466. Addressing confusion about the doctrine's scope, *Exxon* confirmed that *Rooker–Feldman* is limited to its core application: the jurisdictional bar applies *only* in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284.

The doctrine thus does not kick in whenever a state court has considered the same or similar issues raised in the federal lawsuit. *Id.* at 293. More specifically, "[i]f a federal plaintiff present[s] some independent claim … that denies a legal conclusion that a state court has reached in a case to which he was a party … , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* (quotation marks omitted).

So rather than asking if the plaintiff seeks a result that conflicts with or undermines a judgment in parallel state litigation, *Exxon* thus directs our attention to the source of the plaintiff's injuries. *Id.* at 291–92 (explaining that the plaintiff in both *Rooker* and *Feldman* sought to "overturn an injurious state-court judgment"). If the plaintiff complains of an independent prior injury caused outside the judicial process—including by other branches of government—then *Rooker-Feldman* does not apply; instead, preclusion doctrine

comes into play. *See Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016). "In other words, if a plaintiff contends that out-of-court events have caused injury that the state judiciary failed to detect and repair, then a district court has jurisdiction—but only to the extent of dealing with that injury." *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015).

My colleagues have faithfully applied these principles here, and I agree with the analysis and conclusion in the court's opinion. Although Andrade is a "state-court loser," *Exxon*, 544 U.S. at 284, his injuries preceded, and are independent of, any state-court judgment. The thrust of his due-process challenge concerns Hammond's building-code enforcement and the resulting demolish-or-repair order against his property. That order was the product of a lengthy investigation of unsafe conditions at the property by Hammond officers and an administrative adjudication before the Board. Under *Verizon*, *Rooker–Feldman* does not affect the district court's jurisdiction to remedy injuries from Hammond's executive action, including those caused by the Board. *Verizon*, 535 U.S. at 644 n.3.

True, the Indiana trial court and the Court of Appeals upheld the Board's decision on judicial review. *Andrade v. City of Hammond*, 114 N.E.3d 507, 518 (Ind. Ct. App. 2018). But in doing so, the state courts at most "failed to detect and repair" injuries caused by nonjudicial actors. *Iqbal*, 780 F.3d at 730. That is especially true because their review was circumscribed under state administrative law. Review was "de novo" in name only; as the Indiana Court of Appeals explained, the Board's findings were entitled to deference unless they were "arbitrary, capricious, an abuse of discre-

tion, unsupported by the evidence[,] or in excess of statutory authority." *Andrade*, 114 N.E.3d at 513–14 (cleaned up).

That's the reason why *Swartz*—the only post-*Exxon* case on which the district judge meaningfully relied—is distinguishable. *Swartz v. Heartland Equine Rescue*, 940 F.3d 387 (7th Cir. 2019). The case has some surface appeal because the Swartzes' alleged injuries also came from a local government's enforcement action: the seizure of livestock. *Id.* at 390. But unlike here, the enforcement action *began* in state court, not in administrative proceedings. And the seizure was possible only with the state court's blessing—first from a state-court "finding of probable cause to seize the animals" and then an order requiring permanent placement of the animals after animal-cruelty charges were filed. *Id.* at 389–90. The Swartzes' injury, in other words, "was directly caused by the [two] state court's orders." *Id.* at 392. Here, in contrast, the state-court judgments were at least one step removed from the source of the injury.[1]

Two of our sister circuits have endorsed this distinction based on *Verizon*. The Tenth Circuit held that *Rooker–Feldman* did not bar a § 1983 claim based on a county tax assessment, even though that assessment was upheld by a state "Protests Board" and in turn affirmed by the New Mexico Supreme Court. *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d

---

[1] The district judge relied on other pre-*Exxon* cases where we held that *Rooker–Feldman* barred jurisdiction, including *Crestview Village Apartments v. U.S. Department of Housing & Urban Development*, 383 F.3d 552 (7th Cir. 2004). *Crestview Village* also concerned a building-code enforcement action, but like in *Swartz*, it began in state court rather than an administrative agency. *Id.* at 554. It is thus distinguishable on the same basis as *Swartz*.

1202, 1208 (10th Cir. 2006). Because of the state court's affirmance, the court noted that *Rooker–Feldman* might have seemed applicable "[a]t first blush" because "[i]n effect, th[e] lawsuit asks a lower federal court to reverse the result of a state court decision." *Id.* at 1207. But the court noted that under *Verizon*, "*Rooker–Feldman* does not insulate the decision of the Protests Board," a state agency, "from review by a federal court." *Id.* at 1208. More recently, the Fourth Circuit relied on similar reasoning where the injuries were the result of a county board's decision to revoke a liquor license. *Thana v. Bd. of License Comm'rs for Charles Cnty.*, 827 F.3d 314, 321 (4th Cir. 2016) ("State administrative decisions, even those that are subject to judicial review by state courts, are beyond doubt subject to challenge in an independent federal action commenced under jurisdiction explicitly conferred by Congress."). The court emphasized that the challenged action was the result of an "agency-initiated proceeding[] in which limited and deferential judicial review was afforded." *Id.* The same reasoning applies here.

\* \* \*

One final note. In assessing whether *Rooker–Feldman* applies, my colleagues—like the district judge—ask whether Andrade's claims are "inextricably intertwined" with a state-court judgment. Respectfully, that's the wrong starting point. Although *Feldman* used the "inextricably intertwined" verbiage, 460 U.S. at 486, that language is conspicuously absent from the Court's recent statements about the doctrine, including the now-familiar *Exxon* standard. *See Iqbal*, 780 F.3d at 730 (noting that the "intertwined" inquiry is inconsistent with *Exxon*); *see also VanderKodde*, 951 F.3d at 408 (Sutton, J., concurring) (explaining that *Exxon* "tamped

fights over the meaning of 'inextricably intertwined' state and federal court cases").

Our continued recitation of the inextricably intertwined test isn't just harmless gloss of what remains after *Exxon*. We have cautioned that applying the doctrine through that lens could "blur th[e] boundary" between *Rooker–Feldman* and preclusion rules. *Milchtein v. Chisholm*, 880 F.3d 895, 898 (7th Cir. 2018). For that reason we have sought—with varying levels of success—to bring our test in line with *Exxon*'s teachings. *Compare, e.g., id.*; *Iqbal*, 780 F.3d at 730; *and Richardson v. Koch L. Firm, P.C.*, 768 F.3d 732, 734 (7th Cir. 2014) (rejecting the inextricably intertwined test), *with, e.g., Swartz*, 940 F.3d at 388; *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017); *and Sykes*, 837 F.3d at 742 (using "inextricably intertwined").

We should therefore avoid the "inextricably intertwined" framing and stick to the *Exxon* standard. That small change could go a long way toward correcting the lingering misconceptions about *Rooker–Feldman*'s reach.